TODD KIM, Assistant Attorney General
SETH M. BARSKY, Section Chief
S. JAY GOVINDAN, Assistant Section Chief
U.S. Department of Justice
Environment & Natural Resources Division
NICOLE M. SMITH, Trial Attorney (CA Bar No. 303629)
CLIFFORD E. STEVENS, JR., Senior Trial Attorney (DC Bar No. 463906)
150 M St. NE, Washington, D.C. 20002
Tel: (202) 305-0368 (Smith); Tel: (202) 353-7548 (Stevens)
LESLEY LAWRENCE-HAMMER, Senior Trial Attorney (DC Bar No. 982196)
EVE W. MCDONALD, Trial Attorney (CO Bar No. 26304)
999 18th Street, South Terrace – Suite 370, Denver, CO 80202
Tel: (303) 844-1368 (Lawrence-Hammer); Tel: (303) 844-1381 (McDonald)
*Attorneys for Federal Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, et al.,<br>Plaintiffs,<br><br>v.<br><br>GINA RAIMONDO, in her official capacity as Secretary of Commerce, et al.,<br>Defendants.<br>_____<br><br>THE CALIFORNIA NATURAL RESOURCES AGENCY, et al.,<br>Plaintiffs,<br><br>v.<br><br>GINA RAIMONDO, et al.,<br>Defendants. | Case No. 1:20-cv-00426-DAD-EPG<br>Case No. 1:20-cv-00431-DAD-EPG<br><br>**OCTOBER 14, 2021 JOINT STATUS REPORT** |

OCTOBER 14, 2021 JOINT STATUS REPORT
Case Nos. 1:20-cv-00431-DAD-EPG; 1:20-cv-00426-DAD-EPG

Pursuant to the Court's October 10, 2021 Order Granting Motion to Stay until October 15, 2021 (ECF No. 295, Case No. 1:20−cv−00431−DAD−EPG; ECF No. 204, Case No. 1:20-cv-00426-DAD-EPG), the parties in the two above-captioned cases hereby submit this joint status report outlining their respective positions on how these cases should proceed.

**Federal Defendants' and State Plaintiffs' Report**

As explained in the October 1, 2021 Joint Status Report (ECF No. 293, Case No. 1:20-cv-00431-DAD-EPG; ECF No. 202, Case No. 1:20-cv- 00426-DAD-EPG), on September 30, 2021, the United States Bureau of Reclamation (Reclamation), after coordination with the United States Fish and Wildlife Service (FWS), the National Marine Fisheries Service (NMFS), and the California Department of Water Resources (DWR), requested to reinitiate consultation on the Long-Term Operation of the Central Valley Project (CVP) and State Water Project (SWP) under Section 7 of the Endangered Species Act, and on October 1, 2021, FWS and NMFS responded to the request. Federal Defendants and Plaintiffs in *CNRA v. Raimondo*, Case No. 1:20-cv- 00426-DAD-EPG ("State Plaintiffs") have been working diligently to develop a plan for operations of the CVP/SWP ("interim operations plan") through September 30, 2022 while reinitiated consultation is ongoing and have reached agreement as to interim operations through September 30, 2022. That interim operations plan is attached hereto as Attachment 1. Federal Defendants and State Plaintiffs acknowledge that reinitiated consultation may take more than one year, but both agree that addressing interim operations for one year at this time allows the parties to plan for operations based on actual and expected conditions for the water year that started October 1, 2021. Federal Defendants and State Plaintiffs also agree that, in light of the extreme drought conditions over the past two years, adoption of the interim operations plan is necessary to provide for, at a minimum, essential human health and safety needs, including adequate water supplies and water quality for drinking water, and interim species protections.

Federal Defendants and State Plaintiffs previously provided an initial draft interim operations plan in writing to all parties in these cases on September 27, 2021. Federal Defendants and State Plaintiffs solicited feedback through October 5, 2021, although not all

parties were able to provide feedback. Federal Defendants and State Plaintiffs considered comments received and presented the attached revised interim operations plan to all parties in these cases on October 12, 2021. Federal Defendants and State Plaintiffs have offered to have further discussions regarding the revised interim operations plan with all parties by October 29, 2021.

At the time of the filing of this Joint Status Report, Federal Defendants and State Plaintiffs have not been able to reach agreement with plaintiffs in *PCFFA v. Raimondo,* Case No. 1:20-cv-00431-DAD-EPG ("*PCFFA* Plaintiffs"), and all Defendant-Intervenors in both cases about the interim operations plan. Accordingly, Federal Defendants and State Plaintiffs propose that these cases should proceed in accordance with the following schedule:

- On or before November 9, 2021, State Plaintiffs and Federal Defendants will file motions in *CNRA v. Raimondo* and Federal Defendants will file a motion in *PCFFA v. Raimondo* seeking adoption of the interim operations plan and a stay of litigation through September 30, 2022.

- State Plaintiffs and Federal Defendants will notice their motions for a December 21, 2021, hearing date, understanding from the Court's prior orders that motions will be decided on the papers unless the Court indicates otherwise.

- The parties to the two cases will meet and confer regarding a briefing schedule and page limits with the intention of submitting a stipulation and proposed order to the court no later than November 9, 2021.

Federal Defendants and State Plaintiffs propose that these cases remain stayed until their forthcoming stay motions are resolved, as addressed in the briefing schedule above. Such a stay is in the best interest of the Court because it promotes "economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co*., 299 U.S. 248, 254–55 (U.S. 1936). The only other motions currently pending are those filed by Plaintiffs in both cases to complete and/or supplement the administrative records (ECF No. 224-239, Case No. 1:20-cv-00431-DAD-EPG; ECF No. 149-155, 158, Case No. 1:20-cv- 00426-DAD-EPG), and motions to dismiss the

State Plaintiffs' California Endangered Species Act claim in *CNRA v. Raimondo*, which are fully briefed (ECF Nos. 117, 119, 121, 122, Case No. 1:20-cv- 00426-DAD-EPG). Federal Defendants and State Plaintiffs continue to agree that the motions to dismiss should remain in abeyance at this time. Regarding the administrative record motions, as Federal Defendants have previously explained, Federal Defendants contend that continuing to litigate these administrative record motions would be an unnecessary expenditure of limited party and judicial resources given Federal Defendants' reinitiation of consultation and commitment to issue new biological opinions; these new agency actions and their respective records will become the focus of any further judicial review, not the old records being challenged in the pending motions. *See* ECF No. 280, Case No. 1:20-cv-00431-DAD-EPG; ECF No. 193, Case No. 1:20-cv- 00426-DAD-EPG. Certainly, there is no basis to litigate these administrative record motions while the Court is in the midst of deciding whether to stay these cases (including any briefing on the administrative record motions) through September 30, 2022. Therefore, Federal Defendants and State Plaintiffs request that the administrative record motions be held in abeyance until their stay motions are decided, as addressed in the briefing schedule above. If the stay motion is ultimately denied and the Court decides it is necessary for disputes on the prior administrative record to be addressed, Federal Defendants propose that their responses to the pending administrative record motions be due within two weeks of a Court order so ruling.

### *PCFFA* **Plaintiffs' Report**

Federal Defendants' decision to reinitiate consultation on the long-term operations of the CVP and SWP represents an important step forward in this litigation, as does the agreement by the Federal Defendants and State Plaintiffs to seek Court approval of certain discrete changes to the CVP and SWP operations plan for the water year ending September 30, 2022 (referred to above as the "interim operations plan").  The proposed interim operations plan would modify specific aspects of project operations as those operations were approved in 2019 Biological Opinions, with the goal of improving protections for some ESA-listed species; however, the interim operations plan also leaves in place other harmful aspects of the 2019 Biological

Opinions, including their incidental take statements and other aspects of the 2019 Biological Opinions challenged by Plaintiffs, such as the removal of the I:E ratio. As a result, while *PCFFA* Plaintiffs support—and indeed have in this litigation advocated for—certain of the improved protections included in the interim operations plan, it is clear that the 2019 Biological Opinions remain unlawful and allowing them to continue in large part to govern CVP and SWP operations through September 30, 2022 and beyond would cause irreparable harm.

The modifications to the 2019 Biological Opinions set forth in the proposed interim operations plan are inadequate to prevent jeopardy to listed species and to otherwise comply with the Endangered Species Act and other applicable state and federal laws. Federal Defendants, in seeking to convince this Court that *PCFFA* Plaintiffs' claims should be stayed, must bear the burden of demonstrating that the interim operations plan fully remedies those claims. Yet they cannot come close to meeting this standard. Nor have the Federal Defendants even provided information demonstrating what they anticipate the effects of the interim operations plan will be. For example, while the interim operations plan document (Attachment 1) asserts that the "End of September Shasta carryover storage range volumes" are based on "preliminary modeling," that modeling has not been shared with *PCFFA* Plaintiffs despite repeated requests for it and any underlying assumptions.

Against this backdrop, *PCFFA* Plaintiffs simply cannot support the Federal Defendants' proposal to stay the *PCFFA* litigation, even as the Federal Defendants and State Plaintiffs have reached agreement to stay the State's related case. *PCFFA* Plaintiffs provide the following initial responses to that proposal.

***First,*** *PCFFA* Plaintiffs oppose the request, based solely on this joint status report—with the Federal Defendants and State Plaintiffs sharing their proposal for next steps in the litigation only a day prior to the report being due—that the Court enter a stay of litigation effectively through December 21, 2021, without any motion for a stay. In other words, Federal Defendants would have the Court stay the *PCFFA* litigation for the next two months without putting anything before the Court that would demonstrate (as they cannot) that such a continued stay of

the litigation would not prejudice *PCFFA* Plaintiffs.  The explanation that the "only" currently pending matter in the case is the administrative record motion filed by *PCFFA* Plaintiffs misses the point entirely. The Federal Defendants are proposing to continue relying on the 2019 Biological Opinions, subject to certain modifications, through September 30, 2022; and further anticipate those 2019 Biological Opinions remaining in place until the reinitiation of consultation is completed in 2024.  This Court has previously acknowledged that denying plaintiffs a resolution of the merits of their challenge to a biological opinion disadvantages them by placing them in the position of continually having to move for preliminary injunctive relief, as opposed to obtaining a ruling that the biological opinion fails to comply with the ESA and then allowing the parties to brief appropriate interim relief.  *NRDC v. Norton*, No. 1:05-cv-01207-OWW-LJO, 2007 WL 14283, at *6 (E.D. Cal. Jan. 3, 2007).  Here, because the Federal Defendants refused to acknowledge in their reinitiation of consultation that the 2019 Biological Opinions were invalid, or even that reinitiation of consultation was required as a matter of law, there is an urgent need for this Court to allow *PCFFA* Plaintiffs to have the merits of their claims adjudicated.  And *PCFFA* Plaintiffs cannot obtain that relief until the records are completed.  Under Federal Defendants' proposal, the parties would presumably not finish briefing the administrative record motions until next spring, decreasing the ability of *PCFFA* Plaintiffs to obtain a ruling on summary judgment before the 2023 water year.

  ***Second,*** *PCFFA* Plaintiffs anticipate opposing the Federal Defendants' motion to stay the *PCFFA* case because *PCFFA* Plaintiffs have seen no evidence that the proposed interim operations plan, if approved, will fully remedy the harms to ESA-listed fish and because the prolonged stay of litigation will, as described above, significantly prejudice plaintiffs.

  ***Third,*** in light of the delays to date, continued reliance on the 2019 Biological Opinions, and the inadequacies of the proposed interim operations plan, *PCFFA* Plaintiffs anticipate that motions for preliminary injunctive relief regarding 2022 water project operations will be necessary.  The continued delay in resolving Plaintiffs' administrative records motion prejudices Plaintiffs in their efforts to seek such injunctive relief, because the government is still improperly

withholding as privileged important documents that could support Plaintiffs' showing that they are entitled to injunctive relief.

**Fourth,** Federal Defendants offer no persuasive reason why they cannot file their combined motion to stay and for approval of the interim operations plan earlier than November 9, 2021. Certainly, the delay in providing the underlying modeling on which parts of the interim operations plan is based is prejudicial to *PCFFA* Plaintiffs' ability to analyze the proposed operations. Moreover, by not proposing any further briefing schedule now and offering only that the parties would meet and confer and then present their views to the Court, Federal Defendants are increasing the likelihood that there will be delays in completing the briefing on their (formal) motion to stay the *PCFFA* litigation, all while the informal stay they propose in this status report would continue in place.

In light of the foregoing, *PCFFA* Plaintiffs offer the following proposal regarding how the *PCFFA* litigation should proceed (while taking no position on the request of *CNRA* Plaintiffs to stay their related case):

- Federal Defendants should be ordered to provide *PCFFA* Plaintiffs and other parties in *PCFFA v. Raimondo* the modeling (and any related assumptions) underlying the proposed interim operations plan by no later than October 22, 2021.

- Federal Defendants should file a response to *PCFFA* Plaintiffs' long-pending motion regarding the administrative records within two weeks of the current stay expiring, i.e., by October 29, 2021. *See* Dkt. 279 at 10 n.6 (stating that, if stay was denied, Federal Defendants would need two weeks to file their opposition brief).
    - Consistent with the previously entered stipulation regarding briefing on the administrative records (*see* Dkts. 219, 270), Intervenor-Defendants may file a response to Plaintiffs' motion by November 2, 2021. *PCFFA* Plaintiffs will file their reply brief by November 22, 2021.
    - The Court will resolve the administrative record motion (which will be fully briefed by November 22, 2021) to the extent it concludes that a complete stay of the *PCFFA* litigation is not justified.

- Federal Defendants should file their combined motion for a stay and for judicial approval of the proposed interim operations plan ("stay motion") by November 2, 2021 (i.e., one week earlier than proposed by Federal Defendants).

- *PCFFA* Plaintiffs will file an opposition to the Federal Defendants' stay motion by December 2, 2021. Any other oppositions should be filed by the same date.

o *PCFFA* Plaintiffs will meet and confer with Federal Defendants by no later than November 23, 2021, regarding whether *PCFFA* Plaintiffs anticipate filing a motion for preliminary injunctive relief together with their opposition brief. The parties will update the Court on any agreed-upon changes to the schedule that such a motion might warrant.

- Federal Defendants' reply brief in support of their stay motion will be filed by December 16, 2021.

The dates for any hearings on the stay motion and AR motion should be set by the Court.

### Contra Costa Water District's Position

CCWD has no objection to a further stay of litigation as proposed by the Federal Defendants and State Plaintiffs in this Joint Status Report. With respect to the upcoming motions by the Federal Defendants and State Plaintiffs seeking a stay of the litigation until September 30, 2022 and the adoption of an interim operations plan, CCWD requests a briefing schedule that allows for more than two weeks for a response to the motions given the magnitude and complexity of the issues posed. CCWD notes that it has asked several times for the modeling, analyses, and other technical information for the proposed interim operations plan, but has received no responsive information to date.

### State Water Contractors' Position

State Water Contractors ("SWC") opposes the adoption and implementation of the proposed interim operations plan, which was created by Federal Defendants and State Plaintiffs without allowing for the meaningful participation of SWC. Despite repeated requests for analyses evaluating and supporting the interim operations plan, to date, no analyses whatsoever have been provided to SWC, and SWC's comments on the plan were rejected without discussion or explanation. The proposed interim operations plan would make significant, substantive changes to the CVP and SWP operations analyzed in the 2019 Biological Opinions and authorized by the 2020 Record of Decision. Before any such changes are made, the Federal Defendants must comply with the National Environmental Policy Act ("NEPA"), 42 U.S.C. 4332(2)(C), the Endangered Species Act ("ESA"), 16 U.S.C. 1536(a)(2), and the Water Infrastructure Improvements for the

Nation ("WIIN") Act, Pub. L. No. 114-322 (2016). Federal Defendants acknowledged these requirements in representations made to this Court earlier this year.[1] Yet, Federal Defendants and State Plaintiffs have not subjected the proposed interim operations plan to such a review.

SWC also opposes Federal Defendants' motion for a stay of this litigation, under which Federal Defendants indicate that they will "seek adoption of the interim operations plan." Federal Defendants' proposal to seek adoption of the proposed interim operations plan through the motion for stay is improper. An order altering CVP and SWP operations would be tantamount to a preliminary injunction. The Court should not "adopt" the proposed interim operations plan, regardless of the procedural device that Federal Defendants use to request such relief because, as described above, the plan was created by Federal Defendants without compliance with their statutory obligations under NEPA, the ESA, and the WIIN Act. *See Conservation Nw. v. Sherman*, 715 F.3d 1181, 1185 (9th Cir. 2013) ("[A] district court may not approve a consent decree that 'conflicts with or violates' an applicable statute[.]"). SWC reiterates its request for a commitment to analyze the effects of the proposed interim operations plan on SWP and CVP operations, water deliveries, and listed species. SWC members are prepared to engage with Federal Defendants to carry out such analysis, as contemplated by section 4004 of the WIIN Act.

Consistent with State Plaintiffs' and Federal Defendants' statement that they will file a motion for stay on or before November 9, 2021, SWC agrees that the parties be allowed to meet-and-confer and submit on or before November 9, 2021, a proposed scheduling order for the

---

[1] *California Natural Resources Agency v. Ross*, No. 1:20-cv-00426-DAD-EPG (July 14, 2021), ECF, No. 186-1 ("The parties anticipate that this process could result in an agreement in principle to modify the plan for Long Term Operations of the Central Valley Project and State Water Project, which could be subject to further compliance by the Federal Agencies consistent with applicable federal law, including likely reinitiation of consultation under the ESA.").

1   briefing of the motion, or if agreement cannot be reached, a joint status report indicating the

2   parties' respective positions.

### Joint Position of San Luis & Delta-Mendota Water Authority, Westlands Water District, San Juan Water District, Oakdale Irrigation District, South San Joaquin Irrigation District, City of Roseville and City of Folsom

Defendant-Intervenors San Luis & Delta-Mendota Water Authority, Westlands Water

District, San Juan Water District, Oakdale Irrigation District, South San Joaquin Irrigation District,

City of Roseville and City of Folsom do not oppose a stay of this litigation pending completion of

the reinitiated consultation.  These Defendant-Intervenors agree that pending motions regarding

the administrative record and application of the California Endangered Species Act should also be

stayed at least pending a decision on the motion to stay to be filed by State Plaintiffs and Federal

Defendants. However, Defendant-Intervenors oppose implementation of the proposed interim

operations plan. The proposed interim operations plan would make significant, substantive

changes to the CVP and SWP operations analyzed in the 2019 Biological Opinions ("BiOps") and

authorized by the 2020 Record of Decision.  Before any such changes are made, the Federal

Defendants must comply with the National Environmental Policy Act ("NEPA"), 42 U.S.C.

4332(2)(C), the Endangered Species Act ("ESA"), 16 U.S.C. 1536(a)(2), and the Water

Infrastructure Improvements for the Nation ("WIIN") Act, Pub. L. No. 114-322 (2016).  That is

consistent with the representations they made to this Court earlier this year:

> The Federal Agencies believe the Biological Opinions can best be reviewed through
> a process that is underway with the State of California to reconcile measures
> provided for in such Biological Opinions with the State's "Incidental Take Permit
> for Long-Term Operations of the State Water Project . . .", dated March 31, 2020.
> …   The parties anticipate that this process could result in an agreement in principle
> to modify the plan for Long Term Operations of the Central Valley Project and
> State Water Project, which could be subject to further compliance by the Federal
> Agencies consistent with applicable federal law, including likely reinitiation of
> consultation under the ESA.

Review Process of FWS and NMFS 2019 Biological Opinions For Long Term Operations of the CVP and SWP, *California Natural Resources Agency v. Ross*, No. 1:20-cv-00426-DAD-EPG (July 14, 2021), ECF, No. 186-1 (emphasis added).   Despite these representations, Federal Defendants and State Plaintiffs have not subjected the proposed interim operations plan to such a review.

       1.    <u>There Has Been No Showing That Changes To Operations Are Necessary or How They Would Affect Listed Species or Agriculture, Municipalities, Industry, and Wildlife Refuges</u>

The Federal Defendants and State Plaintiffs have submitted a Term Sheet that proposes an interim operations plan for the 2022 water year.   (See Attachment 1.) That proposed interim operations plan represents a marked departure from the operations plan assessed under the 2019 BiOps and authorized by the 2020 Record of Decision (hereinafter "Current Operations").   Among other changes, it would reverse and restrict the flexibility available under the existing CVP operations plan, which has allowed the CVP to meet its congressionally established purposes, including protection, restoration, and enhancement of fish, wildlife, and associated habitat.

As described below, the Federal Defendants have not engaged in the necessary analysis to assess the proposed interim operations plan's impacts.   Absent such analysis, Federal Defendants have no basis to determine whether the interim operations plan they now propose is consistent with their statutory or contractual obligations.   To the contrary, based on a review of the limited information provided by Federal Defendants and the State Plaintiffs, the proposed interim operations plan appears likely to adversely affect agriculture, municipalities, industry, fish, and wildlife, and to interfere with Federal Defendants' statutory and contractual obligations.[2]   *See*

_____

[2] Defendant-Intervenors have requested data supporting development of the proposed interim operations plan.   As of the date of this submission, that data has not been provided.   Federal Defendants have offered to make representatives available to discuss the proposed interim operations plan at some time before October 29.   Aside from the legal flaws discussed herein, it is

Term Sheet §2(g)(i) (modifying water contractor deliveries from Shasta Reservoir).  Those adverse effects would occur without a full and appropriate legal process, and without a demonstration of any demonstrated benefit to listed species.

Moreover, Federal Defendants fail to explain why it is necessary to depart from the Current Operations, which were fully analyzed by Reclamation, the U.S. Fish and Wildlife Service, and the National Marine Fisheries Service, and are being implementing in accordance with the Endangered Species Act.  They have not provided an adequate assessment demonstrating that the proposed interim operations plan would provide a level of protection greater than that available under Current Operations.  This attempt to pivot is arbitrary and capricious. The changes reflected in the proposed operations plan are particularly concerning given that the Current Operations plan and supporting BiOps have shown demonstrative benefits to the CVP, resulting from the flexibility available through adaptive, real-time management.  Fifth Declaration of Kristen N. White ¶ 13, *PCFFA v. Raimondo*, No. 20-cv-00431-DAD-EPG (July 14, 2021), ECF No. 272-5 (explaining that "[u]nder the 2020 ROD, Reclamation ended last water year with a Shasta storage of 2.2 million acre-feet, the second highest storage for Dry hydrologic year types since implementation of the additional environmental demands of D-1641").

Further, the Current Operations plan and supporting BiOps provide the necessary tools to manage through multi-year droughts.  Reclamation developed the Current Operations plan "with drought as a primary consideration," and included the necessary "flexibility to respond to current drought conditions"– as demonstrated by some of the cooperative processes Reclamation has engaged in, with NMFS, CDFW, and other regulatory agencies, in water year 2021 to address

---

unreasonable to substitute the proposed interim operations plan with the Current Operations plan, with virtually no public involvement.

unprecedented and unforeseen circumstances.  *Id.* ¶ 12.[3]  Given the focus on biologically tailored

actions reflected in the Current Operations plan, it is unsurprising that the Current Operations plan

has been more successful than prior operations in achieving the CVP's multiple purposes.[4]

In short, nothing presented by the Federal Defendants and State Plaintiffs to Defendant-

Intervenors suggests that the proposed interim operations plan is needed to protect listed species

for the 2022 water year (which began on October 1, 2021) and there is no evidence to show that

the proposed interim operations plan will not result in re-directed impacts on listed species. Given

this situation,  there is no basis for concluding that the proposed interim operations plan is

necessary to avoid "possible damage" during a stay.  *See Nat. Res. Def. Council v. Norton*, 2007

WL 14283, at *14 (E.D. Cal. Jan. 3, 2007).

2.    The Proposed Interim Operations Are Unlawful

The errors outlined above are compounded by the fact that the Federal Defendants' and

State Plaintiffs' proposed interim operations plan is unlawful—regardless of whether it is instituted

pursuant to a stay or other court order—because it fails to comply with the Federal Defendants'

statutory obligations.

A clear example of such a violation is in section 2.g.i.b. of the Term Sheet, which states:

> Reclamation will not schedule nor make deliveries of stored water
> from Shasta for any reason other than specified in g.i.1.a. above until

---

[3] *See also id.* ¶ 9 (describing the "Drought Contingency Plan for water year 2021 …, describing hydrologic conditions and outlining activities to respond to the drought" under the Current Operations plan); *id.* ¶ 10-11 (identifying other legal methods for modifying CVP operations); *id.* ¶ 13 ("Meet and Confer actions with the Sacramento River Settlement Contractors and the agency collaboration with NMFS allowed under the 2020 ROD have supported voluntary reductions in diversions by senior water right holders and flexibility on water transfers to support cold water in Shasta and other reservoirs."); *id.* ¶ 15 (discussing adaptive management efforts through the Sacramento River Temperature Task Group); *id.* ¶ 16 (discussing efforts by "Drought Relief Year Team"); *id.* ¶ 17 (discussing Reclamation's cooperative work "with the State of California to address emergency drought conditions" within the Current Operations plan).

[4] *See id.* ¶ 13 ("Under the 2020 ROD, Reclamation ended last water year with a Shasta storage of 2.2 million acre-feet, the second highest storage for Dry hydrologic year types since implementation of the additional environmental demands of D-1641.").

> Reclamation receives approval of a temperature management plan from NMFS that shows Reclamation will meet winter run Chinook salmon habitat criteria and end of September carryover storage per g.iii.1.

This provision of the Term Sheet has the great potential of impeding Reclamation's ability to make Level 2 deliveries to managed wetlands, which is a mandatory, non-discretionary statutory obligation under section 3406(d)(1) of the Central Valley Project Improvement Act, Pub. Law 102-575, 106 Stat. 4722. In the operations of Shasta Reservoir, the Term Sheet expressly makes this obligation subordinate to other operational objectives which the State Plaintiffs and Federal Defendants deem a higher priority. *See* Term Sheet § 2.g.i.c.

As discussed, the proposed interim operations plan includes operational elements that are beyond the scope of the Current Operations plan. Those new operational elements have not been reviewed under NEPA or subjected to consultation under Section 7 of the ESA, and thus have not been analyzed in accordance with law. Federal Defendants and State Plaintiffs cannot displace their obligations under federal environmental laws, substitute Reclamation's decision-making authority under federal law (*see* Term Sheet § 2(f), (g)(iv)(3)), or make substantial changes to CVP operations (*see, e.g.*, Term Sheet § 2(b)) by simply filing a Term Sheet as an attachment to an application for a stay. Before changes in CVP operations are made—affecting many of California's people, businesses, and farms, as well as native fish and wildlife—the Federal Defendants and State Plaintiffs must develop supporting administrative records, a thorough analysis of the underlying science, and a full examination of the consequences of the proposed interim operations plan. In addition, the Federal Defendants and State Plaintiffs must provide an explanation of the choices they have made, based on the information and data analyzed. No such record or underlying analysis or explanation exists here. The fact that the proposed interim operations plan might ultimately be incorporated into a court order does not alter the conclusion

that it would be unlawful.  *See, e.g.*, *Conservation Nw. v. Sherman*, 715 F.3d 1181, 1185 (9th Cir. 2013) ("[A] district court may not approve a consent decree that 'conflicts with or violates' an applicable statute[.]").

In stark contrast to the instant matter, Federal Defendants have recently conducted a  NEPA review   before implementing an interim operations plan under similar circumstances. . In November 2019, the Bureau of Reclamation reinitiated consultation on operations of the Klamath Project, and prepared a proposed interim operations plan to govern operations pending completion of consultation. However, unlike here, before implementing that interim plan for the Klamath Project, Reclamation prepared an environmental assessment to examine the potential for significant environmental impacts due to changed operations under the interim plan, along with an analysis of alternatives, including a comparison to the status quo.[5]   The Introduction of that environmental assessment states:

> In accordance with section 102(2)(c) of the National Environmental Policy Act (NEPA) of 1969, as amended, the Bureau of Reclamation (Reclamation) has prepared an Environmental Assessment (EA) to examine the potential direct, indirect, and cumulative impacts to the affected environment associated with Reclamation's proposal to implement an interim plan on Klamath Project (Project) operating procedures from April 2020 to March 2023.

As it concerns the interim operations plan proposed for the CVP, there is no explanation for why Reclamation is excused from complying with section 102(2)(c) of NEPA before making changes to CVP operations pursuant to the Term Sheet, and there is no apparent excuse for this failing.

In addition, the proposed interim operations plan would have Reclamation unlawfully divesting itself of authority delegated to it by statute.  Consistent with federal law directing the Secretary of the Interior, through Reclamation, to operate the CVP, Reclamation cannot voluntarily

---

[5]    The environmental assessment is available online at https://www.usbr.gov/mp/nepa/includes/documentShow.php? Doc_ID=43245

divest itself of final say over CVP operations.  The Term Sheet provides in Section 2(f), however, that "either the Regional Director of FWS or Regional Administrator of NMFS, whichever agency with ESA jurisdiction over the species will make an operational decision for protection of listed species."  Section 2(b) of the Term Sheet similarly reflects that CVP operations will be governed largely by operational requirements developed by California agencies.  Based on its congressional directives, Reclamation must retain its statutory authority over CVP operations.

  3.  Proposed Briefing Schedule

  Consistent with State Plaintiffs' and Federal Defendants' statement that they will file a motion for stay on or before November 9, 2021, these Defendant Intervenors request that the parties be allowed to meet-and-confer and submit on or before November 9, 2021, a proposed scheduling order for the briefing of the motion, or if agreement cannot be reached, a joint status report indicating the parties' respective positions.

### **Sacramento River Intervenors' Position**

  The Sacramento River Settlement Contractors ("SRS Contractors") and Tehama-Colusa Canal Authority (collectively the "Sacramento River Intervenors") support the points raised in the SLDMWA, et al., Position statement that the Term Sheet has not been fully analyzed under various applicable federal laws, including the Endangered Species Act and the National Environmental Policy Act, nor have they been analyzed for consistency with Reclamation's numerous obligations under applicable law and under its numerous contracts. At the same time, the Sacramento River Intervenors recognize that Reclamation has reinitiated consultation on CVP operations and that expending judicial and party resources on litigating the adequacy of the 2019 Biological Opinions may not be appropriate. Thus, the Sacramento River Intervenors are in support of a stay that is shorter in duration that provides the parties more time to develop a lawful interim operations plan that can be supported. However, such an interim plan must be consistent with the law and Reclamation's contractual obligations. While the Sacramento River Intervenors reserve all rights and positions regarding the Term Sheet and intend to participate in

any motion practice or briefing schedule set by this Court, the following points are made now for the Court's consideration.

      1.    <u>The Proposed Interim Operations Plan Will Result in a Breach of Reclamation's Contractual Obligations to the SRS Contractors</u>

The Sacramento River Intervenors have previously explained to the Court the importance of the Sacramento River Settlement Contracts ("SRS Contracts") to CVP operations. ECF Nos.  ECF No. 127 at 6-8.[6]

Section 2(g)(i)(b) of the Term Sheet proposes that Reclamation will not schedule or release stored water from Shasta other than for minimum M & I deliveries and Delta salinity requirements until Reclamation receives approval of a temperature management plan ("TMP") from NMFS. As the Court is aware from last year's motions for preliminary injunction, the TMP is not typically released until mid- to late-May after the reservoir stratifies and modeling of the Shasta cold water pool is complete.  ECF No. 182 to 182-4 (final 2020 TMP filed on May 20, 2020); ECF No. 168-1 (draft 2020 TMP dated April 30, 2020); ECF No. 179 at 15-19 (Court's order describing the timing of the TMP and the history of temperature managements since 2014). The TMP is not typically approved until late May and sometimes into mid-June. In 2021, the TMP was approved in the first part of June.

Article 3(c) of the SRS Contracts requires that Reclamation "furnish water to the Contractor in accordance with the monthly operating schedule or any revisions thereof." Specifically, each contractor is entitled to divert from the Sacramento River the "Contract Total" stated in Exhibit A, which for each contractor includes specific quantities of water from April through October. The Contract Total amount may not be reduced, unless it is a "Shasta Critical Year," which is determined each year based on the full natural inflow to Shasta Lake.

Thus, the SRS Contractors are entitled to divert, and Reclamation is required to release water for those diversions, beginning in <u>April</u>. This is critically important because SRS Contract

---

[6] Citations in the Sacramento River Intervenors' section refer to the Court's docket in the *PCFFA v. Raimondo* action and to ECF pagination.

water that is put to beneficial use in April and May irrigates the crops that sustain the communities and environment throughout the Sacramento Valley. However, the Term Sheet purports to preclude Reclamation from providing water under the SRS Contracts until the TMP is approved in May or June. If Reclamation fails to comply with its obligations under the SRS Contracts, then Reclamation will be operating outside of the current environmental approvals, in breach of its contractual obligations, and in violation of state water rights priority as well as the terms and conditions of Reclamation's permits and licenses for the CVP. This unlawful result is not an acceptable path forward and should not be the basis of any court order entering a stay.

Although the Sacramento River Intervenors understand that Reclamation is attempting to reach a negotiated solution that negotiated solution cannot come at the expense of compliance with federal and state law nor can Reclamation voluntarily take actions that result in a condition of shortage under its contracts.

2.      The Sacramento River Intervenors Support a Better Path Forward in Which the Six Agencies in the Proposed "Shasta Planning Group" Are Already Participating

Instead of pre-deciding operations for 2022 in a manner that stands to violate contract and other applicable laws, and before meaningful information on hydrology develops, the Federal and State agencies should undertake a collaborative planning approach such as the approach the Northern California Water Association's Dry Year Task Force has planned.  Key decisionmakers from the six agencies on the proposed Shasta Planning Group have already committed to participating, and the Dry Year Task Force has scheduled the following sessions to facilitate stakeholder involvement:

- October 1-29, 2021:    Develop and implement list of actions taken or underway.
- October 29, 2021:      Scenario Planning Session 1 to review State and Federal actions from the past two years and actions taken now to prepare for another critically dry or dry year.
- November 12, 2021:     Scenario Planning Session 2 to review individual water user actions from the past two years and actions taken now to prepare for another critically dry or dry year.
- December 2021:         Scenario Planning Session 3 to review groundwater availability and discuss next steps to synthesize and prepare for 2022.

Through a collaborative approach that includes the State and Federal agencies and representatives of the State and Federal contractors, an interim operations plan for 2022 can be formulated based on shared information and common knowledge.

        3.      <u>The Sacramento River Intervenors Agree That the Parties Should Meet and Confer on a Briefing Schedule for Motions</u>

Consistent with State Plaintiffs' and Federal Defendants' statement that they will file a motion for stay on or before November 9, 2021, the Sacramento River Intervenors agree that the parties be allowed to meet-and-confer and submit on or before November 9, 2021, a proposed scheduling order for the briefing and hearing of the motion, or if agreement cannot be reached, a joint status report indicating the parties' respective positions.

**Friant Intervenors' Position**

The Friant Intervenors do not oppose staying this litigation pending resolution of forthcoming motions by the Federal Defendants and the State Plaintiffs. As to the substance of the forthcoming motions, however, the Friant Intervenors anticipate significant objection. The Federal Defendants and the State Plaintiffs did not include the Friant Intervenors in the development of their interim operations plan and, to date, they have not (despite several requests) provided the Friant Intervenors any with data or analyses that may have been used to develop the plan.  Nevertheless, it is quite clear that the plan is directly contrary to the substantive requirements of WIIN Act and the Federal Defendants' binding contractual obligations. Moreover, when formulating the interim operations plan the Federal Defendants do not appear to have complied with their procedural obligations under the National Environmental Policy Act, the Endangered Species Act, the WIIN Act, and other federal laws. Under these circumstances, it is essential that the Friant Intervenors have sufficient time and space to respond to the brief(s) that will be filed by the Federal Defendants and the State Plaintiffs.

DATED: October 14, 2021          Respectfully submitted,

TODD KIM
Assistant Attorney General
SETH M. BARSKY, Section Chief
S. JAY GOVINDAN, Assistant Section Chief
U.S. Department of Justice
Environment & Natural Resources Division

LESLEY LAWRENCE-HAMMER
Sr. Trial Attorney (DC Bar No. 982196)
Wildlife & Marine Resources Section
Tel: (303) 844-1368
Lesley.Lawrence-Hammer@usdoj.gov

*/s/ Nicole M. Smith*
NICOLE M. SMITH
Trial Attorney (CA Bar No. 303629)
Wildlife & Marine Resources Section
Tel: (202) 305-0368
Nicole.M.Smith@usdoj.gov

CLIFFORD E. STEVENS, Jr.
Sr. Trial Attorney (DC Bar No. 463906)
Wildlife & Marine Resources Section
Tel.: (202) 353-7548
clifford.stevens@usdoj.gov

EVE W. MCDONALD
Trial Attorney (CO Bar No. 26304)
Natural Resources Section
Tel: (303) 844-1381
Evelyn.Mcdonald@usdoj.gov

*Attorneys for Federal Defendants*

1   Dated:  October 14, 2021                    Respectfully submitted,

2                                               ROB BONTA
                                                Attorney General of California
3                                               TRACY L. WINSOR
                                                Supervising Deputy Attorney General
4
5                                                /s/ Daniel M. Fuchs

6                                               DANIEL M. FUCHS
                                                Deputy Attorney General
7                                               *Attorneys for Plaintiffs*
                                                *California Environmental Protection*
8                                               *Agency, California Natural Resources*
                                                *Agency, and People of the State of*
9                                               *California by and Through Rob Bonta,*
                                                *Attorney General of the State of California*
10
11
12  DATED:  October 14, 2021                     /s/  Barbara J. Chisholm
                                                Barbara J. Chisholm
13
14                                              HAMILTON CANDEE (SBN 111376)
                                                BARBARA JANE CHISHOLM (SBN 224656)
15                                              ELIZABETH VISSERS (SBN 321365)
                                                ALTSHULER BERZON LLP
16                                              177 Post St., Suite 300
                                                San Francisco, CA 94108
17                                              Telephone: (415) 421-7151
                                                Facsimile: (415) 362-8064
18
19
                                                *Attorneys for Plaintiffs Golden State Salmon*
20                                              *Association, Natural Resources Defense Council,*
                                                *Inc., Defenders of Wildlife, and Bay.Org d/b/a The*
21                                              *Bay Institute*
22
23  DATED:  October 14, 2021                     /s/  Glen H. Spain
                                                Glen H. Spain
24
25                                              GLEN H. SPAIN (SBN 111376)
                                                P.O. Box 11170
26                                              Eugene, OR 97440-3370
                                                Telephone: (541) 689-2000
27
28
    OCTOBER 14, 2021 JOINT STATUS REPORT                                            20
    Case Nos. 1:20-cv-00431-DAD-EPG; 1:20-cv-00426-DAD-EPG

1  *Attorney for Plaintiffs Pacific Coast Federation of*
2  *Fishermen's Associations and Institute for Fisheries*
3  *Resources*

4  DATED: October 14, 2021          KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
5                                   A Professional Corporation

6

7
                                   By:       */s/ Daniel J. O'Hanlon*
8                                          Daniel J. O'Hanlon
9                                          *Attorneys for Defendant-Intervenors,*
                                           *San Luis & Delta-Mendota Water Authority*
10                                         *and Westlands Water District*

11

12  DATED: October 14, 2021
13                                         */s/ Rachel Jacobson*
                                           RACHEL JACOBSON, (*Pro Hac Vice*)
14                                         rachel.jacobson@wilmerhale.com
                                           WILMER CUTLER PICKERING HALE and
15                                         DORR LLP
16                                         1875 Pennsylvania Avenue NW
                                           Washington, DC 20006
17                                         Telephone: (202) 663-6385
                                           Facsimile: (202) 663-6363
18

19                                         Attorney for Westlands Water District

20

21  DATED: October 14, 2021          PERKINS COIE LLP

22                                   By:     */s/ Marc Bruner*
                                           MARC BRUNER
23                                         Attorneys for Defendant-Intervenor
                                           CONTRA COSTA WATER DISTRICT
24

25  DATED: October 14, 2021          Bartkiewicz, Kronick & Shanahan, PC

26

27                                   By:  */s/ Jennifer T. Buckman*
                                         Jennifer T. Buckman
28

Attorneys for the City of Folsom and the City of Roseville

DATED: October 14, 2021          KAPLAN KIRSCH & ROCKWELL, LLP
                                 /s/ Matthew G. Adams
                                 MATTHEW G. ADAMS

                                 *Attorneys for Friant Water Authority and*
                                 *Arvin-Edison Water Storage District*


DATED: October 14, 2021          VAN NESS FELDMAN, LLP

                                 /S/ Jenna R. Mandell-Rice,
                                 JENNA R. MANDELL-RICE,

                                 *Attorney for Intervenor-Defendant The State Water*
                                 *Contractors*

DATED:  October 14, 2021         STOEL RIVES LLP

                                 By: /s/ Elizabeth Ewens

                                 ELIZABETH EWENS
                                 Attorneys for Defendant-Intervenor SAN JUAN
                                 WATER DISTRICT

DATED: October 14, 2021          /s/ Brittany K. Johnson
                                 BRITTANY K. JOHNSON
                                 SOMACH SIMMONS & DUNN
                                 *Attorneys for Intervenor-Defendants Glenn- Colusa*
                                 *Irrigation District; Reclamation District No. 1004;*
                                 *Conaway Preservation Group, LLC; David and*
                                 *Alice te Velde Family Trust; Pelgar Road 1700,*
                                 *LLC; Anderson-Cottonwood Irrigation District;*
                                 *City of Redding; and Knights Landing Investors,*
                                 *LLC*

DATED: October  14, 2021         /s/ Meredith E. Nikkel
                                 MEREDITH E. NIKKEL
                                 DOWNEY BRAND LLP
                                 *Attorneys for Reclamation District No. 108, Sutter*
                                 *Mutual Water Company; Natomas Central Mutual*
                                 *Water Company; River Garden Farms Water*
                                 *Company; Pleasant Grove-Verona Mutual Water*

1     *Company; Pelger Mutual Water Company;*
      *Meridian Farms Water Company; Henry D.*
2     *Richter, Et Al.; Howald Farms, Inc.; Oji Brothers*
      *Farm, Inc.; Oji Family Partnership; Carter Mutual*
3     *Water Company; Windswept Land And Livestock*
      *Company; Maxwell Irrigation District; Beverly F.*
4     *Andreotti, Et Al.; Tisdale Irrigation And Drainage*
      *Company; Provident Irrigation District; Princeton-*
5     *Codora-Glenn Irrigation District; and Tehama-*
      *Colusa Canal Authority*
6

7

8    DATED:  October 14, 2021   PARIS KINCAID & WASIEWSKI, LLP

9

10

11         By:  __/s/  Timothy J. Wasiewski_____
           TIMOTHY J. WASIEWSKI
12         Attorneys for Defendant/Intervenor
           SOUTH SAN JOAQUIN IRRIGATION DISTRICT
13

14

15   DATED: October 14, 2021   */s/ Timothy O'Laughlin*
           TIMOTHY O'LAUGHLIN
16         TIMOTHY O'LAUGHLIN, PLC

17         *Attorneys for Intervenor-Defendant*
           *Oakdale Irrigation District*
18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that today I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will send notification to the attorneys of record in this case.

*/s/ Nicole M. Smith*
Nicole M. Smith