UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GINA RAIMONDO, in her official capacity as Secretary of Commerce, et al.,<br><br>Defendants. | No. 1:20-cv-00426-DAD-EPG<br>No. 1:20-cv-00431-DAD-EPG<br><br><u>ORDER GRANTING FEDERAL DEFENDANTS' MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR</u> |
| THE CALIFORNIA NATURAL RESOURCES AGENCY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GINA RAIMONDO, et al.,<br><br>Defendants. | |

Order

Case No. 1:20-cv-00426-DAD-EPG; Case No. 1:20-cv-00431-DAD-EPG

      Upon Consideration of Federal Defendants' Motion For Voluntary Remand Without Vacatur, and finding good cause shown, the Court orders:

1. The Biological Opinion on Long-term Operation of the Central Valley Project (CVP) and the State Water Project (SWP) issued by the National Marine Fisheries Service (NMFS) on October 21, 2019; the Biological Opinion for the Reinitiation of Consultation on the Coordinated Operations of the CVP and SWP issued by the U.S. Fish and Wildlife Service (FWS) on October 21, 2019 (collectively, the "2019 Biological Opinions"); and the 2020 Record of Decision on Reinitiation of Consultation on the Coordinated Long-Term Modified Operations of the CVP and SWP issued by the United States Bureau of Reclamation (Reclamation) on February 18, 2020 (2020 ROD) are remanded to their respective federal agencies without vacatur.

2. The above captioned cases and all deadlines currently set in them are stayed through September 30, 2022.

3. From the date of this Order through September 30, 2022, SWP and CVP operations shall comply, as consistent with applicable law, with the interim operations set forth below in Paragraphs 6 through 9, and 17 for all water year types.

4. From the date of this Order through September 30, 2022, SWP and CVP operations shall also comply, as consistent with applicable law, with the interim operations set forth below in Paragraphs 10 through 16, as applicable to water year type, should the water year type be classified as Critical, Dry, or Below Normal for Water Year 2022.

5. The coordinated operations of the CVP and SWP not governed by Paragraphs 6 through 17 will continue to be governed by the 2019 Biological Opinions, 2020 ROD, the California Department of Water Resources (DWR) 2020 ITP for DWR's operations of the SWP (DWR's ITP), and any other applicable statutory or regulatory requirements.

6. For Water Year 2022, Reclamation shall adopt the following provisions of DWR's ITP (Where language states Permittee shall be Reclamation and DWR):

/////

      i. 8.5.2 <u>Larval and Juvenile Delta Smelt Protection</u>

      ii. 8.6.1 <u>Winter-run Single-year Loss Threshold</u>

      iii. 8.6.2 <u>Early-season Natural Winter-run Chinook Salmon Discrete Daily Loss Threshold</u>

      iv. 8.6.3 <u>Mid- and Late-season Natural Winter-run Chinook Salmon Daily Loss Threshold</u>

      v. 8.6.4 <u>Daily Spring-run Chinook Salmon Hatchery Surrogate Loss Threshold</u>

      vi. <u>8.7 OMR Flexibility During Delta Excess Conditions</u>

      vii. 8.8 <u>End of OMR Management</u>

7. The following additions will apply to the OMR Flexibility During Delta Excess Condition (ITP Cond. Of Approval 8.7) action described in paragraph 6(vi) above of DWR's ITP:

      i. Any storm flexibility during the March- June period will be operated consistent with the Incidental Take Statement in the 2019 FWS Biological Opinion requiring OMR flows be no more negative than -5000cfs on a 14-day moving average.

      ii. DWR will provide NMFS and FWS an analysis of how the action provides similar or better protection as compared to the 2019 Biological Opinions.

      iii. In 2022, DWR will provide information on how use of OMR flexibility will help replenish storage South of Delta that was depleted in the 2020-2021 water years.

      iv. DWR will only implement OMR flexibility with approval of the Regional Director of FWS and Regional Administrator of NMFS.

8. Water Operations Management Team (WOMT) Process (ITP Cond. Of Approval 8.1.4): The State Water Resources Control Board (SWRCB) will be a member of WOMT, and the SWRCB Executive Director will be included in Director level discussions.

9. Collaborative Approach to Real-Time Risk Assessment (ITP Cond. Of Approval 8.1.4): The Smelt and Salmon Monitoring Teams shall communicate their advice to WOMT. WOMT

shall deliberate to seek agreement on project operations. If WOMT cannot reach consensus on an operational issue, the issue will be elevated to the Directors. If a resolution is reached by the Directors, Reclamation shall operate consistent with the decision regarding Project operations from the Directors. If the Directors do not reach a resolution on operations, either the Regional Director of FWS or Regional Administrator of NMFS, whichever agency with ESA jurisdiction over the species will make an operational decision for protection of listed species after conferring with the Director of the California Department of Fish and Wildlife (CDFW). Reclamation will implement the operational decision.

10. <u>Summer-Fall Action Plan</u> (ITP Cond. Of Approval 9.1.3.1): In coordination with DWR and consistent with the summer-fall habitat action plan, Reclamation will share the water costs for DWR to operate the Suisun Marsh Salinity Control Gates in below normal years for a maximum of 60 days to maximize the number of days that Belden's Landing three-day average salinity is equal to or less than 4 ppt salinity.

11. <u>Export Curtailments for Spring Outflow</u>. DWR will implement ITP Cond. of Approval 8.17 and Reclamation shall reduce exports in the event Water Year 2022 is classified, based on the San Joaquin Valley 60-20-20 index, as critical, dry, or below normal to ensure a volumetric reduction consistent with DWR's implementation. Importantly, Cond. of Approval 8.17 includes an exception procedure for multi-year droughts that could allow adjustments. Nothing herein shall require Reclamation and DWR to reduce exports to less than minimum health and safety.

12. Shasta operations

    i. Water Year 2022 Operational Priorities: The 2020-2021 Water Years have been the second driest two-year period in the historical record. Shasta, Oroville and Folsom have significantly low storage going into WY2022. Reclamation will be entering WY2022 with approximately one-million acre-feet in Shasta Reservoir. Additionally, ongoing drought conditions, compounded by a Thiamine deficiency, are expected to cause two consecutive years of winter-run Chinook salmon egg-to-fry survival that is

less than 15% and trigger State and Federal agencies to confer on and implement all actions necessary to avoid a third year of low survival. The State has taken and will take actions regarding drought, including emergency drought proclamations and orders of the SWRCB. In recognition of this, and in consideration of end of year carryover storage goals pursuant to 16(i). below, DWR will coordinate with Reclamation on operations of the system, and Reclamation will operate Shasta Reservoir commencing in February 2022 to meet the following priorities in the order described below. These priorities will only apply in critical or dry years, as determined by the most current water year type projection, and subject to the decision process in Paragraph 17.

    a. Public Health and Safety: Defined as meeting Municipal and Industrial Delta salinity requirements and minimum Municipal and Industrial deliveries for Public Health and Safety.

    b. Habitat Criteria: Winter Run Chinook Salmon habitat criteria (as described in Paragraph 15 below). Reclamation will not schedule nor make deliveries of stored water from Shasta for any reason other than specified in Paragraph 12(i)(a) above until Reclamation receives approval of a temperature management plan from NMFS that shows Reclamation will meet winter run Chinook salmon habitat criteria and end of September carryover storage per Paragraph 16(i). NMFS will approve the temperature management plan, pursuant to Paragraph 17. If Reclamation is unable to meet habitat criteria for the entire period as described in Paragraph 15(i) for critical, dry, or below normal years, then the agencies will agree on an operation to provide sufficient habitat for the longest period possible. In such a situation, the agencies will also coordinate with the "Meet and Confer Group" described in the 2019 NMFS Biological Opinion and brief *PCFFA* plaintiffs and defendant intervenors.

Order
Case No. 1:20-cv-00426-DAD-EPG; Case No. 1:20-cv-00431-DAD-EPG

4

  c. Senior water contractor deliveries and Central Valley Project Improvement Act (CVPIA) level 2 refuge supplies after ensuring any such deliveries are consistent with Paragraphs 12(i)(b) and 16(i).

  d. Other deliveries after ensuring any such deliveries are consistent with Paragraphs 12(i)(b), 12(i)(c), and 16(i).

13. A six agency Shasta Planning Group consisting of Reclamation, DWR, USFWS, NMFS, CDFW and SWRCB will meet monthly beginning in November 2021, and biweekly or more frequently beginning in January 2022 (see Paragraph 17(ii) below). Further, starting February 1, 2022, Reclamation will confirm with the Shasta Planning Group on a weekly basis that the multiple priorities identified in this interim operations plan for Water Year 2022 can be satisfied in the order described above based on the latest forecast and hydrology, and will adjust releases accordingly. Reclamation may make releases to meet Public Health and Safety pursuant to Paragraph 12(i) year-round, and it may make other releases for deliveries as early as April 1, 2022, provided that they are consistent with the terms of this interim operations plan for Water Year 2022. The Shasta Planning Group will also coordinate with the "Meet and Confer Group" described in the 2019 NMFS Biological Opinion consisting of the Sacramento River Settlement Contractors, Reclamation, and NMFS.

14. To the extent there is a drought proclamation in effect in water year 2022, the Federal Defendants and State Plaintiffs anticipate the SWRCB will use its emergency authorities as appropriate to address dry conditions including protecting Reclamation's previously stored water releases and implementing water curtailments in a timely manner. USFWS, NMFS, CDFW, and Reclamation will use their authorities to support the operational priorities and species needs.

15. Winter Run Chinook Salmon Habitat:

  i. Reclamation will meet the following daily average temperatures at the Clear Creek Gauge from May 15 to October 31 by year type

/////

/////

      a.  55°F in Critical Year

      b.  54°F in Dry and Below Normal Year

16. End of September Shasta Storage for September 2022 in critical, dry, or below normal water years:

    i.  Reclamation will determine final carryover storage volume planning goals by May 1, 2022, subject to water year 2022 hydrologic conditions, which may be amended by May 20, 2022 hydrology. This final goal will be developed pursuant to the decision process in Paragraph 17. NMFS may approve a draft temperature management plan as soon as April 1, 2022, provided that the plan includes carryover storage volumes and temperature targets, consistent with Paragraphs 12 through 17.

    ii.  At the time Federal Defendants and State Plaintiffs submitted their proposed interim operations to the Court, the following potential End of September Shasta carryover storage range volumes based on preliminary modeling* had been identified. (These range values represent the interquartile range for all year types except the Critical year low end and high end which represents a 39% exceedance and 21% exceedance, respectively.):

        a.  1.2 million af to 1.8 million af in Critical year

        b.  1.8 million af to 2.5 million af in Dry year

        c.  2.5 million af to 3.2 million af in Below Normal year

        *Modeling in Critical and Dry years assumes additional federal and state actions to bolster storage conditions.

17. Decision Process Related to Shasta Operations for Water Year 2022 for All Water Year Types

    i.  Reclamation, DWR, NMFS, USFWS, SWRCB and CDFW will use a collaborative approach to real-time risk assessments for Water Year 2022 using technical teams for Shasta operations (Sacramento River Temperature Task Group, Upper Sacramento Scheduling Team). Any modeling used for these decisions shall be publicly available,

Order
Case No. 1:20-cv-00426-DAD-EPG; Case No. 1:20-cv-00431-DAD-EPG

6

1 and the State Plaintiffs and Federal Defendants anticipate that SWRCB decisions will
2 be similarly transparent.
3   ii.  A Shasta Planning Group shall be established by the federal and state agencies
4 comprised of the 6 agencies (i.e., NMFS, FWS, BOR, CDFW, DWR, SWRCB) that
5 will work iteratively with the technical groups to solicit operational guidance and risk
6 assessments and provide policy guidance as necessary. The Shasta Planning Group
7 shall identify and attempt to resolve policy level issues associated with real time risk
8 assessments.
9   a. The Shasta Planning Group shall begin meeting in November consistent with
10 Paragraph 13 above.
11   b. The Shasta Planning Group will develop and implement a system for
12 monitoring and tracking projected hydrologic and operational conditions
13 compared to actual conditions. The group will ensure this information is
14 distributed to defendant-intervenors and *PCFFA* plaintiffs in a timely manner.
15   c. Reclamation will meet with the Shasta Planning Group to discuss the
16 technical input being sought through the Sacramento River Temperature Task
17 Group (SRTTG) or the Upper Sacramento Scheduling Team (USST).
18 Reclamation will ensure the documented outcome of the technical input
19 includes the options put forth to the SRTTG and USST for consideration.
20 After technical input is received from the SRTTG or USST, the Shasta
21 Planning Group will confer and seek to achieve consensus on project
22 operations.
23   iii. If the Shasta Planning Group cannot reach consensus on an operational issue, the issue
24 will be elevated to the Directors of the 6 agencies and the Directors will confer and
25 seek to achieve consensus on Project operations. If a resolution is reached by the
26 Directors, Reclamation shall operate consistent with the decision regarding Project
27 operations from the Directors. If the Directors do not reach a resolution on operations,
28

the Regional Administrator of NMFS will make an operational decision for protection of listed species after conferring with the Director of CDFW; provided however, for operations issues regarding temperature management and reservoir carryover goals that are not resolved at the Directors' level and therefore elevate to NMFS, the Regional Administrator will make those operational decisions after also conferring with the Executive Director of the SWRCB. Reclamation will implement the operational decision.

18. The interim operations set forth above are specific to the hydrologic conditions of Water Year 2022 and may not be appropriate as part of 2023 or 2024 Water Year operations or long-term operations; and, shall expire on September 30, 2022. Accordingly, Federal Defendants and State Plaintiffs shall collaborate with each other as needed on development of interim operations for Water Years 2023 and 2024, and in doing so confer with public water agencies that contract for delivery of water from the CVP and the SWP and the *PCFFA* plaintiffs.

19. Nothing in this order shall be interpreted as precedential as to actions that Federal Defendants or State Plaintiffs may take in future consultations, including the reinitiated consultation and ITP review that Federal Defendants and State Plaintiffs are currently undertaking.

20. The Court retains jurisdiction to modify this Order as may be necessary and in the interests of justice and to decide disputes among the Parties to the above captioned cases ("Parties") regarding compliance with this Order notwithstanding the stay also ordered here. In the event such a dispute arises, the Parties will confer in good faith about the dispute. A Party may initiate proceedings in this Court to enforce the terms of Paragraphs 6 through 17 of this order no earlier than four calendar days after such meet-and-confer efforts begin, and the Parties agree to facilitate the prompt determination of any such dispute, including by agreeing to resolution of the dispute on shortened time. The first remedy shall be a motion to enforce the terms of this order. This order shall not, in the first instance, be enforceable through a proceeding for contempt of court.

21. On August 31, 2022, Federal Defendants and State Plaintiffs will file a joint status report describing the status of discussions regarding a plan for interim coordinated operations to govern for the water year beginning October 1, 2022, or some other interval of time.

22. On September 30, 2022, Federal Defendants and State Plaintiffs will file a joint status report: 1) describing the status of the reinitiated CVP and SWP consultation; 2) recommending a plan for interim CVP and SWP operations to govern for the 2023 water year or some other interval of time, if consultation remains ongoing; and 3) requesting a continued stay or other path forward in the litigation.

IT IS SO ORDERED.

Dated:   **March 14, 2022**                            /s/ Dale A. Drozd
                                                              UNITED STATES DISTRICT JUDGE