VAN NESS FELDMAN LLP
Jenna R. Mandell-Rice, *Pro Hac Vice*
Sophia E. Amberson, *Pro Hac Vice*
1191 Second Avenue, Suite 1800
Seattle, WA 98101
Tel: 206-623-9372
Email: jrm@vnf.com
samberson@vnf.com

VAN NESS FELDMAN LLP
Allison E. McAdam, SBN 226836
3717 Mt. Diablo Boulevard, Suite 200
Lafayette, CA 94549
Tel: 925-282-8016
Email: amcadam@vnf.com

BEST BEST & KRIEGER
Joseph P. Byrne, SBN 190365
General Counsel for SWC
300 S. Grand Avenue, 25th Floor
Los Angeles, CA 90071
Tel: 213-787-2556
Email: joseph.byrne@bbklaw.com

*Attorneys for Intervenor-Defendant*
*State Water Contractors*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CALIFORNIA NATURAL RESOURCES AGENCY, et al.,<br><br>Plaintiffs,<br>v.<br><br>GINA RAIMONDO, in her official capacity as Secretary of Commerce, et al.,<br><br>Defendants. | Case No. 1:20-cv-00426-JLT-EPG<br>Case No. 1:20-cv-00431-JLT-EPG<br><br>STATE WATER CONTRACTORS' RESPONSE TO FEDERAL DEFENDANTS AND STATE PLAINTIFFS' PROPOSED 2023 INTERIM OPERATION PLAN<br><br>Date:   None Set<br>Time:   None Set<br>Judge: Jennifer L. Thurston<br><br>Courtroom 5, 7th Floor<br>2500 Tulare Street<br>Fresno, CA |
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, et al.,<br><br>Plaintiffs,<br>v.<br><br>GINA RAIMONDO, in her official capacity as Secretary of Commerce, et al.,<br><br>Defendants. | |

State Water Contractors ("SWC") takes no position on the specific operations proposed in the 2023 Interim Operations Plan ("IOP"), but remains concerned regarding the impacts to water supply that may result from the 2023 IOP. SWC objects to and opposes several assertions made by Federal Defendants and State Plaintiffs' Joint Status Report, ECF No. 286,[1] and addresses those in this response. Contrary to Federal Defendants and State Plaintiffs' assertions, a 2023 IOP is not "necessary" and the record does not support a finding that the 2022 IOP resulted in water conditions or species' outcomes that were better than those that would have been achieved under the 2019 Biological Opinions.

**I.     The 2023 IOP is not "necessary."**

SWC maintains its position that the 2019 Biological Opinions are legally valid, well-reasoned agency decisions that are protective of Endangered Species Act ("ESA") listed species. In their Joint Status Report, Federal Defendants and State Plaintiffs assert that the 2023 IOP is "necessary to address hydrologic conditions and operational and listed species' needs." ECF No. 286 at 3. This Court did not previously find that an IOP was "necessary" to protect ESA listed species from irreparable harm during the voluntary remand period of the 2019 Biological Opinions, *see generally* ECF No. 276, and the Court should decline to do so with respect to the 2023 IOP for two reasons.

First, whether or not the IOP is necessary to prevent irreparable harm to the species, to avoid jeopardy, or by some other measures, is not relevant to the Court's inquiry under the consent decree standard previously adopted by the Court and under which Federal Defendants and State Plaintiffs ask the Court to adopt the 2023 IOP. If the Court applies the consent decree standard, making a finding regarding the necessity of the IOP would be akin to issuing an advisory opinion.[2] *Charpentier v. Belshe*, Civ. No. S-90-758 EJG/PAN, 1994 WL 792591, at *3 (E.D. Cal. Dec. 21, 1994) ("Rendering an advisory opinion on the effect of a law deemed to be inapplicable,

---

[1] Unless otherwise noted, all ECF citations are to *California Natural Resource Agency v. Raimondo,* No. 1:20-cv-00426-JLT-EPG.

[2] SWC notes that Federal Defendants and State Plaintiffs' use of a joint status report to request relief from the Court is procedurally irregular. Adoption of an extensions to the original IOP or new IOPs should be made on a motion rather than a joint status report.

| SWC RESPONSE TO 2023 IOP | 1 | Case No. 1:20-cv-00426-JLT-EPG |
| | | Case No. 1:20-cv-00431-JLT-EPG |

falls outside the court's Article III jurisdiction" (citation omitted)); *Hamman v. Sw. Gas Pipeline, Inc.*, 721 F.2d 140, 143–44 (5th Cir. 1983) (finding it inappropriate to rule on immaterial issues as doing so would constitute "render[ing] an advisory opinion" (citation omitted)).

The consent decree standard adopted in the Court's March 11, 2022 Order did not consider whether the 2022 IOP was necessary. ECF No. 276. The consent decree standard merely evaluates whether the decree is "fair, reasonable and equitable and does not violate the law or public policy."[3] *Id.* at 72 (quoting *Turtle Island Restoration Network v. U.S. Dep't of Com.*, 672 F.3d 1160, 1165 (9th Cir. 2012)). Indeed, the Court went to great lengths to avoid deciding whether the 2022 IOP was necessary.[4] *Id.* at 64 (applying the consent decree standard instead of the preliminary injunction standard considering "significant challenges related to application of the traditional equitable relief standard in the present case"). Indeed, in 2022, Defendant Intervenors argued that the injunction standard as outlined in *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008), applied, which would require the Court to find that the 2022 IOP was necessary to avoid irreparable harm. ECF No. 276 at 60-61. PCFFA Plaintiffs argued that the Court was required to find that the 2022 IOP avoided jeopardy. *Id.* at 69. However, the Court declined to apply these standards, finding that the consent decree standard was "possibly the *only* practical way" to evaluate the relief requested. ECF No. 276 at 71. Thus, in evaluating the 2022 IOP, the Court did not find that the 2022 IOP was necessary to prevent irreparable harm or jeopardy to an ESA listed species. *Id.* If the Court applies the consent decree standard as it did in 2022, the Court should once again refrain from finding that the 2023 IOP is necessary.

Second, in the current request, Federal Defendants and State Plaintiffs have failed to provide any analysis demonstrating that the 2023 IOP is necessary to prevent irreparable harm or avoid jeopardy to the species; they only make bare assertions regarding conditions this water year without connecting those conditions to species impacts. ECF No. 286 at 4. In light of each of

---

[3] SWC believes the development of the 2023 IOP was not in the collaborative spirit intended by the Court in its March 11, 2022 Order, ECF No. 276, as SWC was presented with a largely completed IOP, and SWC's ideas for a broader change to approach were not given meaningful consideration.

[4] Federal Defendants overstate the Court's order in claiming that the Court "previously anticipated [] another IOP is necessary." ECF No. 286 at 3. The citation Federal Defendants provide for this statement merely acknowledges that the parties would likely be before this Court to review an IOP for Water Year 2023.

these considerations, the Court should not conclude that the IOP is "necessary."

II. **The 2022 IOP did not result in better operational or biological outcomes than the 2019 Biological Opinions.**

Federal Defendants and State Plaintiffs argue that the 2022 IOP "functioned well both operationally and biologically." ECF No. 286 at 10. To the extent that the Court applies the consent decree standard, the Court should not find that the 2022 IOP represented an operational or biological improvement over the 2019 Biological Opinions.

As an initial matter, evaluation of the performance of the *2022* IOP is not required to adopt the *2023* IOP under the consent decree standard. As noted above, the relevant question is whether the *2023* IOP is "fair, reasonable and equitable" in light of the specific conditions and considerations this water year. ECF No. 276 at 72.

More critically, Federal Defendants and State Plaintiffs have not provided the Court with support for a finding that the 2022 IOP represented a benefit to the species that would not have otherwise been achieved under the 2019 Biological Opinions. The State's declarant, John Leahigh, acknowledges that the IOP rarely controlled releases of water from the State Water Project ("SWP") in 2022. ECF No. 286-5 ¶ 20; *see also* Declaration of Chandra Chilmakuri (dated Oct. 31, 2022) ("Chilmakuri Decl.") ¶ 13. None of the declarants put forth by Federal Defendants and State Plaintiffs identifies any purported benefit from the 2022 IOP's numerous provisions related to Delta Old and Middle River ("OMR") operations. For operations where the 2022 IOP were in effect in 2022, specifically Shasta operations, the same operations could have occurred under the 2019 Biological Opinions as occurred under the 2022 IOP. Chilmakuri Decl. ¶¶ 14, 19. None of Federal Defendants or State Plaintiffs' declarants assert that operations *would* have been different had the 2022 IOP not been in place.

The only benefits identified by Federal Defendants from the 2022 IOP were process-based, but the 2019 Biological Opinions contemplate the same processes touted as beneficial under the 2022 IOP, including the requirement for agency coordination and development of a temperature management plan. *Id.* ¶ 19. Although State Plaintiffs' declarant, Les Grober, suggests that temperature management and Shasta end-of-year storage under the 2022 IOP represented an

improvement over conditions that occurred in prior years, ECF No. 286-6 ¶¶ 19-23, Mr. Grober's comparisons of operations under the 2022 IOP to prior years under the 2019 Biological Opinions are flawed, and do not provide a reliable basis for the Court to determine whether the 2022 IOP achieved better outcomes than would have been achieved under the 2019 Biological Opinions. Chilmakuri Decl. ¶¶ 16-19; Declaration of Lee G. Bergfeld (dated Oct. 31, 2022), ¶¶ 11-19.  Even Federal Defendants appear to disclaim the declaration of Mr. Grober.  ECF No. 286 at 12.

Moreover, Mr. Grober does not analyze whether any of the purported differences in temperature and Shasta end-of-year storage benefited the *species*.  *See generally* ECF No. 286-6. Of all Federal Defendants and State Plaintiffs' declarants, only one—Cathy Marcinkevage— identifies one potential benefit to the species: *anticipated* lower temperature dependent mortality. ECF No. 286-4.  However, her declaration merely states that *modeled* temperature dependent mortality is lower than that *projected* under the temperature management plan and suggests that such reduction may be attributable to the strategy developed in the temperature management plan. *Id.* ¶¶ 16-17.  However, a temperature management plan would have been required whether or not the 2022 IOP was in place.  Chilmakuri Decl. ¶ 19.  Federal Defendants and State Plaintiffs put forth no evidence whatsoever that the temperature management plan that would have been developed under the 2019 Biological Opinions would have resulted in different outcomes for the species than the 2022 temperature management plan.

In sum, the Court should decline to make a finding regarding the effectiveness of the 2022 IOP because it is not necessary to do so under the consent decree standard and because such a finding is not supported by the record.

**III.   SWC remains concerned that the 2023 IOP will impact SWP water supplies in a year when water supplies are already drastically limited.**

SWC is concerned that Federal Defendants and State Plaintiffs have now repeatedly asked the Court to impose an operational scheme without the benefit of modeling or complete analysis of its likely impacts both to ESA listed species, water supply, and the environment more generally. SWC joins Section II.B.3 of the concurrently filed October 31, 2022 Opposition by the Sacramento River Settlement Contractors.

SWC is concerned about the potential impact of the 2023 IOP on SWP supplies, particularly considering that water supplies have already been drastically limited. One primary concern under the 2023 is Federal Defendants' ability to meet their share of in-basin uses, including water quality requirements under Decision-1641. To the extent that Federal Defendants' fail to meet their share of in-basin uses, SWP water will have to make up the difference, further depleting water available to serve SWC members, several of which are already relying heavily on human health and safety water. Chilmakuri Decl. ¶¶ 7-8, 11.

Federal Defendants and State Plaintiffs have made a change to paragraph 12 of the IOP since 2022, by changing the phrase "senior water contractor deliveries" to "deliveries of stored water to senior water contractors" when describing the priorities of releases from Shasta. While Federal Defendants and State Plaintiffs assert that this is merely a clarification, it leaves the priority for releases from Shasta under the IOP subject to more than one interpretation. The primary ambiguity in the language is whether the inflows to Shasta will be stored or would be released without storing (or bypassed). *Id.* ¶ 9. If the Shasta inflows are not stored and are instead bypassed, it is unclear whether the bypassed inflows are subject to the priorities set forth in Paragraph 12, or if they may be released outside of the priority regime. *Id*. If Reclamation bypasses Shasta inflows and does not subject bypassed inflows to the prioritization under Paragraph 12, there will be less stored water in Shasta overall. *Id.* ¶ 10. With less stored water in Shasta, the CVP will have less water to contribute to its in-basin obligations that it shares with the SWP pursuant to the Coordinated Operations Agreement, potentially further increasing the burden on the SWP to make up the difference. *Id.*

This is particularly concerning in a water year like 2023, where SWP has no "extra" water to lend. At a minimum, the Federal Defendants and State Plaintiffs must clarify the intended meaning of this provision for the Court and the parties must have the opportunity to fully brief the Court on the legal ramifications, water quality impacts, and species' impacts of that interpretation.

1  DATED: October 31, 2022

2  Respectfully Submitted,

3  VAN NESS FELDMAN LLP

5  */s/ Jenna R. Mandell-Rice*
Jenna R. Mandell-Rice, *Pro Hac Vice*

*Attorney for Intervenor-Defendant
State Water Contractors*

**CERTIFICATE OF SERVICE**

I hereby certify that today I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will send notification to the attorneys of record in this case.

Dated: October 31, 2022     /s/ *Jenna R. Mandell-Rice*
Jenna R. Mandell-Rice