1
2
3
4
5
6
7
8
9

TODD KIM,
Attorney General
S. JAY GOVINDAN, Section Chief
U.S. Department of Justice
Environment & Natural Resources Division
NICOLE M. SMITH, Assistant Section Chief
CLIFFORD E. STEVENS, JR., Senior Trial Attorney (DC Bar No. 463906)
KAMELA A. CASCHETTE, Trial Attorney (New York Bar)
150 M St. NE, Washington, D.C. 20002
Tel: (202) 353-7548 (Stevens); Tel: (202) 305-0340 (Caschette)
LESLEY LAWRENCE-HAMMER, Senior Trial Attorney (DC Bar No. 982196)
EVE W. MCDONALD, Trial Attorney (CO Bar No. 26304)
999 18th Street, South Terrace – Suite 370, Denver, CO 80202
Tel: (303) 844-1368 (Lawrence-Hammer); Tel: (303) 844-1381 (McDonald)

10

*Attorneys for Federal Defendants*

11

**UNITED STATES DISTRICT COURT**

12

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

13
14
15
16
17
18

PACIFIC COAST FEDERATION OF
FISHERMEN'S ASSOCIATIONS, et al.,
                    Plaintiffs,
              v.
GINA RAIMONDO, in her official
capacity as Secretary of Commerce, et
al.,
                    Defendants.
_____

Case No. 1:20-cv-00431-JLT-EPG
Case No. 1:20-cv-00426-JLT-EPG

**[PROPOSED] ORDER**

19
20
21
22

THE CALIFORNIA NATURAL
RESOURCES AGENCY, et al.,
                    Plaintiffs,
              v.
GINA RAIMONDO, et al.,
                    Defendants.

23

24

The Court orders:

25

1.  Per this Court's March 11, 2022 and March 14, 2022 Orders in these cases, the Biological

26

Opinion on Long-term Operation of the Central Valley Project (CVP) and the State Water

27

Project (SWP) issued by the National Marine Fisheries Service (NMFS) on October 21, 2019;

28

the Biological Opinion for the Reinitiation of Consultation on the Coordinated Operations of

the CVP and SWP issued by the U.S. Fish and Wildlife Service (FWS) on October 21, 2019 (collectively, the "2019 Biological Opinions"); and the 2020 Record of Decision on Reinitiation of Consultation on the Coordinated Long-Term Modified Operations of the CVP and SWP issued by the United States Bureau of Reclamation (Reclamation) on February 18, 2020 (2020 ROD) were remanded to their respective federal agencies without vacatur. That remand is ongoing.

2. The above captioned cases and all deadlines currently set in them are stayed until Reclamation issues a new Record of Decision on the Long Term Operations of the CVP and SWP (New ROD), or until December 20, 2024, whichever occurs first (Expiration Date).

3. From the date of this Order through the Expiration Date, SWP and CVP operations shall comply, as consistent with applicable law, with the interim operations set forth below in Paragraphs 6 through 10 and 18 for all water year types.

4. From the date of this Order through the Expiration Date, SWP and CVP operations shall also comply, as consistent with applicable law, with the interim operations set forth below in Paragraphs 11 through 17, as specified for the applicable water year type.

5. The coordinated operations of the CVP and SWP not governed by Paragraphs 6 through 18 will continue to be governed by the 2019 Biological Opinions, 2020 ROD, the California Department of Water Resources (DWR) 2020 ITP for DWR's operations of the SWP (DWR's ITP), and any other applicable statutory or regulatory requirements.

6. Through the Expiration Date, Reclamation shall adopt the following provisions of DWR's ITP (Where language states Permittee shall be Reclamation and DWR):

     i.   8.5.2 <u>Larval and Juvenile Delta Smelt Protection</u>

     ii.   8.6.1 <u>Winter-run Single-year Loss Threshold</u>

     iii.   8.6.2 <u>Early-season Natural Winter-run Chinook Salmon Discrete Daily Loss Threshold</u>

     iv.   8.6.3 <u>Mid- and Late-season Natural Winter-run Chinook Salmon Daily Loss Threshold</u>

     v.   8.6.4 <u>Daily Spring-run Chinook Salmon Hatchery Surrogate Loss Threshold</u>

      vi.    <u>8.7 OMR Flexibility During Delta Excess Conditions</u>

      vii.   8.8 <u>End of OMR Management</u>

7. The following additions will apply to the OMR Flexibility During Delta Excess Condition (ITP Cond. Of Approval 8.7) action described in Paragraph 6(vi) above of DWR's ITP:

      i.    Any storm flexibility during the March-June period will be operated consistent with the Incidental Take Statement in the 2019 FWS Biological Opinion requiring OMR flows be no more negative than -5000 cfs on a 14-day moving average.

      ii.   DWR will provide NMFS and FWS an analysis of how the action provides similar or better protection as compared to the 2019 Biological Opinions.

      iii.  DWR will only implement OMR flexibility with approval of the Regional Director of FWS and Regional Administrator of NMFS. Factors considered in the decision shall include habitat conditions, potential effects, and seasonal incidental take levels for species covered under the 2019 Biological Opinions.

8. During water year 2023, and likely due to very wet hydrology, the agencies discovered an unintended inconsistency between offramps in the "Turbidity Bridge Avoidance" action as described in the FWS 2019 Biological Opinion and ITP Condition of Approval 8.5.1. To address this inconsistency, Reclamation will not seek to offramp the "Turbidity Bridge Avoidance" action unless consistent with DWR's action under the ITP Condition of Approval 8.5.1, and the decision-making process outlined in Paragraph 10 of this IOP will be followed as to Reclamation's operations.

9. Water Operations Management Team (WOMT) Process (ITP Cond. Of Approval 8.1.4): The State Water Resources Control Board (SWRCB) will be a member of WOMT, and the SWRCB Executive Director will be included in Director level discussions.

10. Collaborative Approach to Real-Time Risk Assessment (ITP Cond. Of Approval 8.1.4): The Smelt and Salmon Monitoring Teams shall communicate their advice to WOMT. WOMT shall deliberate to seek agreement on project operations. If WOMT cannot reach consensus on an operational issue, the issue will be elevated to the Directors. If a resolution is reached by the

Directors, Reclamation shall operate consistent with the decision regarding Project operations from the Directors.  If the Directors do not reach a resolution on operations, either the Regional Director of FWS or Regional Administrator of NMFS, whichever agency has ESA jurisdiction over the species, will make an operational decision for protection of listed species after conferring with the Director of the California Department of Fish and Wildlife (CDFW).  Reclamation will implement the operational decision.

11. Summer-Fall Action Plan (ITP Cond. Of Approval 9.1.3.1): DWR will implement ITP Cond. Of Approval 9.1.3.1 and, in coordination with DWR and consistent with the summer-fall habitat action plan, Reclamation will share the water costs for DWR to operate the Suisun Marsh Salinity Control Gates in Below Normal years for a maximum of 60 days to maximize the number of days that Belden's Landing three-day average salinity is equal to or less than 4 ppt salinity.

12. Export Curtailments for Spring Outflow (ITP Cond. Of Approval 8.17): DWR will implement ITP Cond. Of Approval 8.17 and Reclamation shall reduce exports in the event Water Year 2024 is classified, based on the San Joaquin Valley 60-20-20 index, as Critical, Dry, or Below Normal to ensure a volumetric reduction consistent with DWR's implementation. In the event Water Year 2024 is classified as Above Normal, Reclamation shall reduce exports by 100,000 acre feet to contribute to Spring outflow except the action will be suspended during a high Delta outflow condition described in ITP Condition of Approval 8.17. This Spring outflow action is intended to benefit the survival of Longfin Smelt, Spring-run Chinook Salmon, Winter-run Chinook Salmon and Central Valley Steelhead. Documentation of biological rationale for scheduling and shaping of volumetric share or export reduction will be recorded in WOMT notes. Nothing herein shall require Reclamation and DWR to reduce exports to less than minimum health and safety.

13. Shasta operations

    i.    Operational Priorities through Expiration Date:

        Water year 2023 was a significant hydrologic change from the dry conditions of 2020-2022 with some areas in central and southern California experiencing their wettest year on record. The

Shasta basin received average precipitation with inflow about 5.6 MAF. Although not a wet year for the Shasta basin, the reservoir was still able to fully recover and begin the temperature management season with a full reservoir.  In 2023, Reclamation managed Shasta operations to achieve the 53.5 temperature objective with no exceedances. Reclamation began water year 2024 with over 3.2 MAF and has a high chance of starting the temperature management season of 2024 with adequate storage for meeting similar goals as set in WY 2023. However, should drought conditions return in WY 2024, the reservoir may not fill by the start of temperature management season. Additionally, a Thiamine deficiency is expected to further compromise winter-run Chinook salmon egg-to-fry survival.  For water year 2024, based on current information, temperature management and flow remain the primary management tools within Reclamation's discretion for minimizing early life stage mortality.

In consideration of end of year carryover storage goals pursuant to 17(i) below, DWR will coordinate with Reclamation on operations of the system, and Reclamation will operate Shasta Reservoir commencing in February 2024 to meet the following priorities in the order described below. These priorities will only apply in Critical or Dry years, as determined by the most current water year type projection, and subject to the decision process in Paragraph 18.

a.  Public Health and Safety: Defined as meeting Municipal and Industrial Delta salinity requirements and minimum Municipal and Industrial deliveries for Public Health and Safety.

b.  Habitat Criteria: Winter-Run Chinook Salmon habitat criteria (as described in Paragraph 16 below). Reclamation will not schedule nor make deliveries of stored water from Shasta for any reason other than specified in Paragraph 13(i)(a) above until Reclamation receives approval of a temperature management plan from NMFS that shows Reclamation will meet winter-run Chinook salmon habitat criteria and end of September carryover storage per Paragraph 17(i). NMFS will approve the temperature management plan, pursuant to Paragraph 18. If Reclamation is unable to meet habitat criteria for the entire period as described in Paragraph 16(i) for Critical, Dry, or Below

Normal years, then a six-agency Shasta Planning Group, consisting of Reclamation, DWR, FWS, NMFS, CDFW and SWRCB, will agree on temperature management that provides sufficient habitat for the longest period possible. Factors to be considered in the temperature management plan shall include available cold water in Shasta Reservoir, forecasted hydrologic and meteorological conditions, estimated winter-run Chinook salmon adult escapement, and strategies to protect winter-run Chinook salmon egg incubation to maximize balance of juvenile production and life-history diversity. In such a situation, the agencies will also coordinate with the "Meet and Confer Group" described in the 2019 NMFS Biological Opinion and brief *PCFFA* plaintiffs and defendant intervenors.

c. Deliveries of stored water to senior water contractors and Central Valley Project Improvement Act (CVPIA) level 2 refuge supplies after ensuring any such deliveries are consistent with Paragraphs 13(i)(b) and 17(i).

d. Other deliveries after ensuring any such deliveries are consistent with Paragraphs 13(i)(b), 13(i)(c), and 17(i).

14. The Shasta Planning Group began meeting monthly in November 2023, and will meet biweekly or more frequently beginning in January 2024 (see Paragraph 18(ii) below). Further, starting February 1, 2024, Reclamation will confirm with the Shasta Planning Group on a weekly basis that the multiple priorities identified in this interim operations plan through the Expiration Date, can be satisfied in the order described above based on the latest forecast and hydrology, and will adjust releases accordingly. Reclamation may make releases to meet Public Health and Safety pursuant to Paragraph 13(i) year-round, and it may make other releases for deliveries as early as April 1, 2024, provided that they are consistent with the terms of this interim operations plan through the Expiration Date. The Shasta Planning Group will also coordinate with the "Meet and Confer Group" described in the 2019 NMFS Biological Opinion consisting of the Sacramento River Settlement Contractors, Reclamation, and NMFS. Additionally, the six agencies will utilize the Shasta Planning Group to discuss any potential

effects of the operations described in Paragraph 13 on other CVP/SWP streams.

15. To the extent there is a drought proclamation in effect in Water Year 2024, the Federal Defendants and State Plaintiffs anticipate the SWRCB will use its emergency authorities as appropriate to address dry conditions including protecting Reclamation's previously stored water releases and implementing water curtailments in a timely manner. FWS, NMFS, CDFW, and Reclamation will use their authorities to support the operational priorities and species needs.

16. Winter-Run Chinook Salmon Habitat:

   i.  Reclamation will meet the following daily average temperatures at the Clear Creek Gauge from May 15 to October 31 by year type:

      a.  55°F in Critical Year

      b.  54°F in Dry and Below Normal Year

17. End of September Shasta Storage for September 2024 in Critical, Dry, or Below Normal water years:

   i.  Reclamation will determine final carryover storage volume planning goals by May 1, 2024, subject to Water Year 2024 hydrologic conditions, which may be amended by May 20, 2024 hydrology. This final goal will be developed pursuant to the decision process in Paragraph 18. NMFS may approve a draft temperature management plan as soon as April 1, 2024, provided that the plan includes carryover storage volumes and temperature targets, consistent with Paragraphs 13 through 18.

   ii.  The following potential End of September Shasta carryover storage goals have been identified to inform the development of a final target as described in Paragraph 17(i), above, recognizing these goals may not be achievable:

      a.  1.2 MAF to 1.8 MAF in Critical year

      b.  1.8 MAF to 2.5 MAF in Dry year

      c.  2.5 MAF 3.2 MAF in Below Normal year

18. Decision Process Related to Shasta Operations through the Expiration Date, for All Water Year Types

i.   Reclamation, DWR, NMFS, FWS, SWRCB and CDFW will use a collaborative approach to real-time risk assessments through the Expiration Date, using technical teams for Shasta operations (Sacramento River Temperature Task Group, Upper Sacramento Scheduling Team). Any modeling used for these decisions shall be publicly available, and the State Plaintiffs and Federal Defendants anticipate that SWRCB decisions will be similarly transparent.

ii.   A Shasta Planning Group shall be established by the federal and state agencies comprised of the six agencies (i.e., NMFS, FWS, BOR, CDFW, DWR, SWRCB) that will work iteratively with the technical groups to solicit operational guidance and risk assessments and provide policy guidance as necessary. The Shasta Planning Group shall identify and attempt to resolve policy level issues associated with real time risk assessments.

    a.   The Shasta Planning Group began meeting in November consistent with Paragraph 14 above.

    b.   The Shasta Planning Group will monitor projected hydrologic and operational conditions compared to actual conditions, which are available online.

    c.   Reclamation will meet with the Shasta Planning Group to discuss the technical input being sought through the Sacramento River Temperature Task Group (SRTTG) or the Upper Sacramento Scheduling Team (USST).  Reclamation will ensure the documented outcome of the technical input includes the options put forth to the SRTTG and USST for consideration. After technical input is received from the SRTTG or USST, the Shasta Planning Group will confer and seek to achieve consensus on project operations.

iii.   If the Shasta Planning Group cannot reach consensus on an operational issue, the issue will be elevated to the Directors of the six agencies and the Directors will confer and seek to achieve consensus on Project operations. If a resolution is reached by the Directors, Reclamation shall operate consistent with the decision regarding Project operations from the Directors.  If the Directors do not reach a resolution on operations,

the Regional Administrator of NMFS will make an operational decision for protection of listed species after conferring with the Director of CDFW; provided however, for operations issues regarding temperature management and reservoir carryover goals that are not resolved at the Directors' level and therefore elevate to NMFS, the Regional Administrator will make those operational decisions after also conferring with the Executive Director of the SWRCB. Reclamation will implement the operational decision.

19. The interim operations set forth above are specific to the hydrologic conditions through the Expiration Date and may not be appropriate for the remainder of Water Year 2025 operations or long-term operations, and they shall expire on the Expiration Date. Accordingly, if Reclamation will not issue a ROD by December 20, 2024, Federal Defendants and State Plaintiffs shall collaborate with each other as needed on development of interim operations for the remainder of Water Year 2025, and in doing so confer with public water agencies that contract for delivery of water from the CVP and the SWP and the *PCFFA* plaintiffs.

20. Nothing in this order shall be interpreted as precedential as to actions that Federal Defendants or State Plaintiffs may take in future consultations, including the reinitiated consultation and ITP review that Federal Defendants and State Plaintiffs are currently undertaking.

21. The Court retains jurisdiction to modify this Order as may be necessary and in the interests of justice and to decide disputes among the Parties to the above captioned cases ("Parties") regarding compliance with this Order notwithstanding the stay also ordered here. In the event such a dispute arises, the Parties will confer in good faith about the dispute. A Party may initiate proceedings in this Court to enforce the terms of Paragraphs 6 through 18 of this order no earlier than four calendar days after such meet-and-confer efforts begin, and the Parties agree to facilitate the prompt determination of any such dispute, including by agreeing to resolution of the dispute on shortened time. The first remedy shall be a motion to enforce the terms of this order. This order shall not, in the first instance, be enforceable through a proceeding for contempt of court.

   If Reclamation issues a New ROD before December 20, 2024, thereby lifting the stay of this case pursuant to Paragraph 2, Federal Defendants will file a notice of the New ROD's issuance

within five business days of it occurring. No later than twenty-one days after any such notice is filed, the parties will file a joint status report informing the Court of their positions regarding termination or resumption of the litigation. If Reclamation does not issue a New ROD by December 20, 2024, and the stay lifts on that date pursuant to Paragraph 2, Federal Defendants and State Plaintiffs will file a joint status report by December 20, 2024: 1) describing the status of the reinitiated CVP and SWP consultation; 2) recommending a plan for interim CVP and SWP operations to govern for the remainder of Water Year 2025 or some other interval of time, if consultation remains ongoing; and 3) requesting a continued stay or other path forward in the litigation.

IT IS SO ORDERED.

Dated:   **April 1, 2024**

UNITED STATES DISTRICT JUDGE